# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **GRACE POLASEK,** | § | Civil Action No. _____ |
| **Individually and on behalf** | § | |
| **of all others similarly situated** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Plaintiff,* | § | |
| | § | **COLLECTIVE ACTION** |
| v. | § | **PURSUANT TO 29 U.S.C. § 621** |
| | § | |
| **AG-PRO, LLC, d/b/a AG-PRO** | § | |
| **COMPANIES, AG-PRO TEXAS, LLC,** | § | **CLASS ACTION** |
| **AND AG-PRO OHIO** | § | **PURSUANT TO FED. R. CIV. P. 23** |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

Grace Polasek (hereinafter "Plaintiff") brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiffs and the Putative Class Members") of Defendant Ag-Pro, LLC d/b/a Ag-Pro Companies, Ag-Pro Texas, LLC, and Ag-Pro Ohio, LLC (collectively hereinafter "Defendants"). This is a case for sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and pay inequality, in violation of the Equal Pay Act, as amended 29 U.S.C. §§ 201–19, *et seq* ("EPA").

Plaintiffs and the Putative Class Members' EPA claim is brought as a collective action, while the Title VII claim is brought as a class action.

## I.
## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 621 and 42 U.S.C. § 2000e.

2.      This Court has federal question jurisdiction over the EPA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

3.      This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District.

4.      Venue is proper in the Southern District of Texas 28 U.S.C. § 1391(b), because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

5.      Specifically, Plaintiff Polasek worked for Defendants in Taft, Texas, which is located within this District and Division.

6.      Plaintiff Polasek has complied with all conditions precedent to filing a suit under Title VII.

7.      Plaintiff Polasek filed her Charge of Discrimination on April 17, 2019.

8.      Plaintiff Polasek's charge gave notice of gender discrimination on a class-wide basis.

9.      Plaintiff Polasek has received a Dismissal and Notice of Rights issued by the EEOC.

10.     Plaintiff Polasek filed her complaint within 90 days of receipt of the Dismissal and Notice of Rights issued by the EEOC.

## II.
## THE PARTIES

11.     Plaintiff Grace Polasek ("Polasek") worked for Defendants within this judicial district and within the relevant time period, and currently resides in Nueces County, Texas.[1]

12.     The Putative Class Members (Title VII Class Members) are those female employees who worked for Defendants at any time from June 21, 2018 through the final disposition of this matter and were either, denied business opportunities because of their gender, compensated less because of their gender, were not promoted because of their gender, were subjected to a hostile work environment, had their performance evaluated more negatively because of their gender, and/or provided with inferior terms and conditions of employment because of their gender.

---

[1] The written consent of Grace Polasek is attached as "Exhibit A."

13. The Putative Class Members (EPA Class Members) are all female employees who worked for Defendants at any time in the past three years through the final disposition of this matter.

14. Defendant Ag-Pro, LLC d/b/a Ag-Pro Companies ("Ag-Pro") is a foreign limited liability company and is not registered with the Texas Secretary of State and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079 pursuant to the Texas Long Arm Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Plaintiffs therefore requests the Texas Secretary of State to serve Ag-Pro Ohio at its principle office located at 19595 US Hwy 84, Boston, GA 31626.

15. Defendant Ag-Pro Texas, LLC ("Ag-Pro Texas") is a foreign limited liability company, licensed to and doing business in Texas, and may be served through its registered agent for service of process: **Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.**

16. Defendant Ag-Pro Ohio, LLC ("Ag-Pro Ohio") is a foreign limited liability company and is not registered with the Texas Secretary of State and may be served through the Texas Secretary of State at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079 pursuant to the Texas Long Arm Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Plaintiffs therefore requests the Texas Secretary of State to serve Ag-Pro Ohio at its principle office located at 19595 US Hwy 84, Boston, GA 31626.

### III.
### COVERAGE

17. Defendants transact business in the Southern District of Texas.

18. At all material times, Defendant Ag-Pro, Ag-Pro Texas, and Ag-Pro Ohio have been an "employer" under Title VII.

19. At all material times, Defendant Ag-Pro, Ag-Pro Texas, and Ag-Pro Ohio have had more than 500 employees.

20.    At all material times Defendants have been joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight, and control over Plaintiffs and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the EPA, with respect to the entire employment for the workweeks at issue in this case.

21.    At all times hereinafter mentioned, Defendants have been "employers" within the meaning of Section 3(d) of the EPA, 29 U.S.C. § 203(d).

22.    At all times hereinafter mentioned, Defendants have been an "enterprise" within the meaning of Section 3(r) of the EPA, 29 U.S.C. § 203(d).

23.    At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the EPA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

24.    The proposed class of similarly situated individuals, i.e. potential collective members sought to be certified pursuant to Title VII, is defined as "female employees who worked for Defendants at any time from June 21, 2018 through the final disposition of this matter and were either, denied business opportunities because of their gender, compensated less because of their gender, were not promoted because of their gender, were subjected to a hostile work environment, had their performance evaluated more negatively because of their gender, and/or provided with inferior terms and conditions of employment because of their gender."

25.     The proposed class of similarly situated individuals, i.e. potential collective members sought to be certified pursuant to the EPA, is defined as "all female employees who worked for Ag-Pro, LLC, d/b/a Ag-Pro Companies, Ag-Pro Texas, LLC, and/or Ag-Pro Ohio, LLC at any time in the past three years through the final disposition of this matter.

26.     The precise size and identity of the proposed classes should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## IV.
## STATEMENT OF FACTS

27.     Defendants are the largest privately-owned John Deere tractor dealership in the United States and sells and services John Deere tractors and related equipment in Texas, Florida, Alabama, Georgia, and South Carolina.[2]

28.     Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

29.     Defendants directly control Plaintiffs and the Putative Class Members work schedules, conditions of employment, and determine the rate and method of the payment of wages.

30.     Specifically, Plaintiffs and the Putative Class Members report to and are directed by managers from each business entity.

31.     Defendants did not act entirely independent of each other and have not been completely disassociated with respect to the work of Plaintiffs and the Putative Class Members.

32.     Specifically, Plaintiff Polasek would work with and report to managers and employees with Ag-Pro Ohio, she was hired by Ag-Pro Texas, and she was fired by employees of Ag-Pro.

33.     Defendants shared the power to hire and fire employees of each entity.

34.     Defendants shared the power to administer disciplinary procedures to employees of each entity.

---

[2] https://www.agprocompanies.com/about

35.     Defendants jointly maintain records of hours, payroll, and insurance for employees of each entity.

36.     Defendants share the power to directly supervise employees of each entity.

37.     Further, in order to file HR complaints against employees of either Ag-Pro Texas or Ag-Pro Ohio, Plaintiffs and the Putative Class Members must file complaints with the Ag-Pro HR department, as all three entities share the same HR department.

38.     As a result of their intertwined activities and operations, Defendants are responsible, both individually and jointly, for compliance with all applicable provisions of the EPA and Title VII.

39.     Plaintiff Polasek was hired on or about January of 2018 as a Data Analyst.

40.     Shortly after Plaintiff Polasek was hired, a male employee was hired on, also as a Data Analyst. The male employee had a similar background, experience, and education to Plaintiff Polasek.

41.     Despite being similarly situated, Plaintiff Polasek was paid approximately $10,000 less per year than the similarly situated male Data Analyst, Allen Pettit, who performed substantially similar work requiring equal skill, effort, and responsibility to that of Plaintiff Polasek.

42.     The male employee hired as a Data analyst was also given substantially greater benefits in his employment than Plaintiff Polasek. The Mr. Pettit was given 20% commission on his sales, an RTK bonus on total sales, and he immediately received a new company vehicle. Plaintiff Polasek was promised (but was never paid) 5% commissions on her sales, no RTK bonus, and was eventually given a company vehicle that had multiple safety deficiencies and was not in compliance with basic road safety laws.

43.     Another Male Data Analyst was also hired shortly after Plaintiff Polasek named Cade Schaffner. Mr. Schaffner had a lower level of education and experience than Plaintiff Polasek yet was paid commissions on his sales, given the RTK bonus, and also received a new company vehicle.

44.     Later, Plaintiff Polasek was promoted to IS Manager in order to replace the prior (male) IS Manager, Jake Pustejovsky. Ms. Polasek was one of only three female managers in the entire company, the other fifty (50+) plus managers in the company were all male. Mr. Pustejovsky had held the IS Manager position for less than a year. Plaintiff Polasek had a similar level of education and experience to Mr. Pustejovsky yet was paid far less in salary and did not receive the benefits in employment that Mr. Pustejovsky received when he started and performed the same job. Mr. Pustejovsky was not only paid substantially more, but was also allowed to work from home, and was given greater vacation benefits than Plaintiff Polasek.

45.     Plaintiff Polasek was hired to the IS Manager role in May of 2018. Around December of 2018 a man named Jerry Swartzer was hired for an IS Manager role. Even though Mr. Swartzer had a lower level of both education and experience, he was paid significantly more than Plaintiff Polasek.

46.     The Putative Class Member suffered similar treatment in that they were also offered less money, less in commissions and bonuses, and did not receive the newer, nicer, road legal vehicles as similarly situated male coworkers.

47.     Plaintiff Polasek was subjected to a hostile work environment, denied any further career advancement, and was generally treated less favorably than male coworkers.

48.     On several occasions, Plaintiff Polasek was undermined and harassed by Defendants while performing her job.

49.     Plaintiff Polasek was consistently excluded from manager meetings (despite Plaintiff Polasek being a manager) where only male managers were allowed to attend. Plaintiff Polasek was excluded from manager meetings in September 2018, October of 2018, and January of 2019, being told the manager meetings were "guy things."

50.     Around December of 2018, a John Deere Solutions Specialist, informed Plaintiff Polasek that Kurt Morris, Ag-Pro Texas' President, and Kyle Cooper, another high-level corporate

officer of Ag-Pro Texas, stated to the John Deere Solutions Specialist that Plaintiff Polasek was a young, unequipped, and inadequate female to work for Ag-Pro and would be a poor manager. John Deere is a major part of Ag-Pro's business model as Ag-Pro sells and services John Deere products. Such statements severely undermined Plaintiff Polasek's ability to perform her job which included working with John Deere representatives.

51. Nor were these statements the only time Defendants undercut Plaintiff Polasek to John Deere, Defendants' most important business relationship. Another John Deere employee informed Plaintiff Polasek in early 2019 that Matthew Carlton, the Chief Operating Officer of Defendants' enterprise, was soliciting employees for (untrue) negative reviews of Plaintiff Polasek with the intention of creating a reason for Plaintiff Polasek's termination. According to the John Deere Employee, he was informed of Mr. Carlton's plan to create a (false) reason to terminate Plaintiff Polasek, by Mr. Carlton when the John Deere employee asked about the future of the IS Department. Mr. Carlton never sought negative reviews of any male employees, only of Plaintiff Polasek.

52. Mr. Carlton's plan was not only a part of a continuously hostile work environment but was also part of a plan of retaliation against Plaintiff Polasek for her repeated complaints against the hostile environment she faced.

53. Throughout 2019 Plaintiff Polasek submitted both verbal and written complaints of harassment to Defendants' integrated HR department. Plaintiff Polasek was referred to as a "dumb b****," nothing more than a "sexy chick," a "young, unequipped, and inadequate female," and told that women do not belong in the workplace but instead should be at home taking care of the home, and that the only place "hot" women should work at is a strip club.

54. Plaintiff Polasek and her female coworkers were subjected to far more degrading "critiques" of their work than male coworkers. Plaintiff Polasek and her female coworkers were

consistently called "dumb bi*****" during meetings or told that their work resembles that of a second grader, while male managers were not addressed with profanity or degraded in such fashions.

55.     Plaintiff Polasek and her female coworkers were constantly subjected to sexist verbal harassment by Defendants' male management such as James Groover, Timmy Heirs, Josue Gonzales, Matthew Carlton, Kurt Morris, and Kyle Cooper. Those individuals would state that women are unsuited for sales jobs, that women could not be managers, that women's only job is to find a husband so they can stay at home where they belong, that female employees are only there so they (the male employees) have someone to "hook up with."

56.     Despite Plaintiff Polasek's complaints to HR, Defendants took no corrective action to address the harassment faced by Plaintiffs and the Putative Class Members, in fact Plaintiff Polasek was punished for her HR complaints.

57.     As stated above, Defendants managers began seeking out ways to remove Plaintiff Polasek from the enterprise. Around March 7, 2019, Plaintiff Polasek received a disciplinary action as a result of the negative comments that Matthew Carlton had solicited from other employees. The write up also stated it was as a result of Plaintiff Polsaek operating a secondary business which is forbidden by Defendants' company policies despite the fact that several male employees, including executives, operate secondary businesses.

58.     Around March 11, 2019 Plaintiff Polasek was again, given another disciplinary action, this time for insubordination. Plaintiff Polasek requested that her manager correspond with her via email rather than a phone call. Defendants do not have a policy forbidding this conduct and Plaintiff Polasek was never informed that such conduct was either forbidden or qualified as insubordination.

59.     On approximately April 17, 2019 Plaintiff Polasek filed her Title VII and EPA complaint with the EEOC. Some days later the EEOC forwarded to Defendants a copy of Plaintiff

Polasek's EEOC complaint. On May 16, 2019 Plaintiff Polasek was terminated by the Defendants. Plaintiff believes her termination was in direct retaliation for her EEOC filing.

60. After her termination, Defendants blacklisted her from the industry, as a result Plaintiff Polasek has been unable to find any work within the industry.

61. Plaintiff Polasek's injury continues throughout her entire employment with Defendants. For every position Plaintiff Polasek held, she was compensated at a lower rate compared to male co-workers who performed substantially similar work, evaluated more negatively because of her gender, subjected to pervasive sexist verbal harassment, and retaliated against for standing up for herself and her female coworkers.

62. Defendants maintain uniform employment, compensation, and promotion policies throughout the United States.

63. Upon information and belief, Defendants cultivate and promote a common corporate culture. Their facilities, throughout the United States, use a common organization structure, organizing employees by common job titles.

64. To provide their services, Defendants employed (and continue to employ) numerous female employees—including Plaintiffs and the Putative Class Members. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout the United States.

65. Plaintiffs and the Putative Class Members are (or were) female workers, employed by Defendants in the past three years through the final disposition of this matter.

66. Defendants have a company-wide and systematic policy, pattern, and/or practice of discrimination against female employees.

67. Defendants actively engaged and intentionally discriminated against Plaintiffs and the Putative Class Members in violation of Title VII by, among other things, utilizing a biased

performance rating system, utilizing a biased compensation scheme, utilizing a biased promotion system, promotion an openly sexist and hostile work environment, and failing to take reasonable and adequate steps to prevent and correct these issues.

68.    Accordingly, Defendants actions were (and continue to be) in violation of Title VII.

69.    Defendants have a company-wide policy and practice wherein they universally pay all female employees less than their similarly situated male co-workers who perform substantially equal work in violation of the EPA.

70.    On information and belief Defendants do not have a seniority system, merit system, a system that measures earnings by quantity or quality of production, or any other factor other than sex that can account for these pay differences.

71.    Defendants were (and continue to be) aware that Plaintiffs and the Putative Class Members are regularly paid (and continue to be paid) less than their similarly situated male co-workers in violation of the EPA.

72.    Defendants' failure to compensate Plaintiffs and the Putative Class Members at a rate equal to their similarly situated male co-workers who performed substantially equal work that required substantially equal skill, effort, and responsibility violated (and continues to violate) the EPA.

73.    Defendants knew or should have known that they were underpaying Plaintiffs and the Putative Class Members as compared to similarly situated male employees who performed substantially equal work that required substantially equal skill, effort, and responsibility in violation of the EPA.

74.    Defendants' actions therefore constitute a willful violation under the EPA and were not made in good faith.

## V.
## CAUSES OF ACTION

### COUNT ONE

75.     All previous paragraphs are incorporated as though fully set forth herein.

76.     Plaintiff Polasek and the Putative Class Members further bring this action as a class action pursuant to Fed. R. Civ. P. 23 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

77.     The Title VII Class is defined as:

**ALL FEMALE EMPLOYEES WHO WORKED FOR AG-PRO, LLC d/b/a AG-PRO COMPANIES, AG-PRO TEXAS, LLC, AND/OR AG-PRO OHIO AT ANY TIME FROM JUNE 21, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WERE EITHER, DENIED BUSINESS OPPORTUNITIES BECAUSE OF THEIR GENDER, COMPENSATED LESS BECAUSE OF THEIR GENDER, WERE DENIED PROMOTIONS BECAUSE OF THEIR GENDER, WERE SUBJECTED TO A HOSTILE ENVIRONMENT, HAD THEIR PERFORMANCE EVALUATED MORE NEGATIVELY BECAUSE OF THEIR GENDER, AND/OR PROVIDED WITH INFERIOR TERMS AND CONDITIONS OF EMPLOYMENT BECAUSE OF THEIR GENDER ("Title VII Class" or "Title VII Class Members").**

78.     Ag-Pro has violated 42 U.S.C. § 2000e-2, by:

   a.   Not granting business opportunities to female employees because of their gender;

   b.   Compensating female employees less because of their gender;

   c.   Not promoting female employees because of their gender;

   d.   Not taking reasonable and adequate steps to address the hostile work environment Defendants created;

   e.   Evaluating female employees by a different standard because of their gender; and

   f.   Providing inferior terms and conditions of employment given to female employees because of their gender.

79.     Specifically, Ag-Pro has engaged in an intentional, company-wide and systematic pattern or practice of discriminating against its female employees. It has intentionally discriminated against Plaintiff Polasek and the Title VII Class by, among other things, allowing its male managers

unchecked discretion in the selection of individuals for promotion; perpetuating a consistent underpayment of women employees, fostering a corporate culture that systematically excludes and devalues women, undervalues their contributions and abilities, and discounts their workplace performance; fosters a culture of hate and sexist, and failing to take reasonable and necessary steps to prevent instances of discrimination as described above.

80.     Ag-Pro's company-wide policies have the effect of denying Plaintiff Polasek and the Title VII Class business opportunities because of their gender; compensating them less because of their gender; failing to promote them because of their gender; failing to offer them management roles within Ag-Pro's corporate structure because of their gender; subjecting them to a hostile work environment, subjecting them to a different performance standard, and offering them inferior conditions of employment because of their gender.

81.     Ag-Pro's conduct constitutes illegal, intentional discrimination and disparate treatment under 42 U.S.C. § 2000e *et. seq.*

82.     Plaintiff Polasek and the Title VII Class bring their claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals who worked for Ag-Pro from June 21, 2018 through the final disposition of this matter and were either, denied business opportunities because of their gender, compensated less because of their gender, were not promoted because of their gender, were subject to a hostile work environment, had their performance evaluated more negatively because of their gender, and/or provided with inferior terms and conditions of employment because of their gender.

83.     Class action treatment of the Title VII Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

84.     The number of Title VII Class Members is so numerous that joinder of all class members is impracticable.

85.     Plaintiff Polasek is a member of the Title VII Class, and her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of the other class members.

86.     The Title VII Class and their counsel will fairly and adequately represent the class members and their interests.

87.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

88.     Accordingly, the Title VII Class should be certified as defined in Paragraph 77.

89.     As the direct and proximate result of Ag-Pro's violations described herein, Plaintiff Polasek and the Title VII Class Members suffered economic damage in the form of lost earnings and benefits which exceed the minimum jurisdictional limits of this Court, for which they sue to recover from Defendants, together with pre-judgment and post-judgment interest at the maximum rate allowed by law.

90.     Further, Plaintiff Polasek and the Title VII Class Members seek to recover their reasonable and necessary attorneys' fees and expenses incurred in prosecuting this matter in the trial court and any and all appeals therefrom.

## COUNT TWO
### (Collective Action Alleging EPA Violation)

91.     All previous paragraphs are incorporated as though fully set forth herein.

92.     Plaintiffs and the Putative Class Members further bring this action as a collective action pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' female employees who are (or were) similarly situated to Plaintiffs who were paid less than male employees doing the same or similar work.

93.    The EPA Class is defined as:

**ALL FEMALE EMPLOYEES WHO WORKED FOR AG-PRO, LLC D/B/A AG-PRO COMPANIES, AG-PRO TEXAS, LLC, AND/OR AG-PRO OHIO, LLC ANYWHERE IN THE UNITED STATES AT ANY TIME FROM JUNE 6, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. THIS CLASS INCLUDES FEMALE EMPLOYEES (A) WHO WERE NOT COMPENSATED EQUALLY TO MALE EMPLOYEES WHO HAD SUBSTANTIALLY SIMILAR JOB CLASSIFICATIONS, FUNCTIONS, TITLES, AND/OR JOB DUTIES, (B) WHO WERE NOT COMPENSATED EQUALLY TO MALE EMPLOYEES WHO PERFORMED SUBSTANTIALLY SIMILAR WORK AND/OR (C) WHO WERE DENIED EQUAL COMPENSATION TO SIMILARLY SITUATED MALE EMPLOYEES BY BEING HIRED INTO POSITIONS AT LESSER GRADES THAN MALE EMPLOYEES WHO PERFORMED SUBSTANTIALLY SIMILAR WORK ("EPA Collective" or "EPA Collective Members").**

94.    Defendants have discriminated against Plaintiffs and the collective in violation of the EPA. Defendants have paid (and continues to pay) Plaintiffs and the Putative Class Members less than similarity-situated male co-workers performing substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. Defendants discriminate against the Plaintiffs and Putative Class Members by subjecting them to discriminatory pay, discriminatory denial of promotions, and other forms of discrimination in violation of the EPA.

95.    The differential in pay between male and female employee was not due to seniority, merit, quantity, or quality of production, but was due to gender. Defendants did not act in good faith, and caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA.

96.    Defendants knew or should have known their pay practices were in violation of the EPA.

97.     Defendants are aware or should have been aware that federal law requires them to pay their female employees at a rate commensurate to that of male employees performing substantially similar work.

98.     The decision and practice by Defendants to not pay Plaintiffs and the EPA Collective Members equal wages as compared to their male co-workers who performed substantially equal work on jobs the performance of which required equal skill, effort, and responsibility, and which are performed under similar working conditions was neither reasonable nor in good faith.

99.     The forgoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Defendants have willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255(a).

100.     Defendants have engaged in systematic gender discrimination in pay against their female employees. Defendants have caused, contributed to, and perpetrated gender-based pay disparities through their common policies, practices, and procedures, including but not limited to common compensation and performance management policies, and centralized decision-making with respect to pay.

101.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' female employees who are (or were) similarly situated to Plaintiffs who were paid less than male employees doing the same or similar work.

102.     Plaintiffs and the Putative Class Members are similarly situated in that they are Female employees of Defendants and have been affected by policies and practices that have the purpose and effect of denying them employment opportunities because of their gender. These policies and practices result in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

103.    Plaintiffs and the Putative Class Members have been paid less than male co-workers in the same establishment for work requiring equal skill, effort, and responsibility and performed under similar working conditions. This unequal pay is not justified by seniority, a merit system, a system that measures earnings by quantity or quality of production, or any other factor other than sex.

104.    Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the EPA.

105.    Defendants failure to pay Plaintiffs and the EPA Collective Members compensation at the rates required by the EPA, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Plaintiffs or the EPA Collective Members.

106.    Thus, Plaintiff's experiences are typical of the experiences of the EPA Collective Members.

107.    The specific job titles or precise job requirements of the various EPA Collective Members does not prevent collective treatment.

108.    All of the EPA Collective Members—regardless of their specific job titles, precise job requirements, or job locations—are entitled to be paid equal wages to that of male co-workers who performed substantially equal work on jobs the performance of which required equal skill, effort, and responsibility, and which are performed under similar working conditions.

109.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

110.    Questions of law and fact common to Plaintiffs and the Collective Members include, but are not limited to, the following

a.    Whether Collective Members were subjected to an unlawful common policy that resulted in unequal pay for equal work;

b. Whether Defendants unlawfully failed (and continues to fail) to compensate members of the collective at a level commensurate with similarly situated male employees;

c. Whether Defendants' policy, practice, or procedure of failing to compensate the Collective Members at levels commensurate with comparable male employees violates applicable provisions of the EPA; and

d. Whether Defendants' failure to compensate members of the collective at a level commensurate with comparable male employees was willful within the meaning of the EPA.

111.    Absent a collective action, many members of the proposed EPA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

112.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

113.    Accordingly, the EPA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 93 and notice should be promptly sent.

114.    As a direct result of Defendants' discriminatory policies and/or practices as described above, female employees have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

115.    Accordingly, Plaintiffs and the EPA Collective Members are entitled to be paid lost wages pursuant to the EPA, plus liquidated damages, attorneys' fees and costs.

## COUNT THREE
### (Retaliation in Violation of Title VII)

116.    All previous paragraphs are incorporated as though fully set forth herein.

117.     Plaintiff Polasek engaged in a protected activity, including making internal complaints, both orally and in writing, of unlawful discrimination and by filing charges with the EEOC complaining of Defendant's discriminatory policies and practices.

118.     Defendants took adverse actions against Plaintiff Polasek with the purpose of retaliating against her because of her participation in protected activities and Plaintiff Polasek suffered damages as a result of that conduct.

119.     Accordingly, Plaintiff Polasek request all relief as herein described.


# VI.
# DAMAGES

120.     As a result of Defendant's conduct, Plaintiff seeks relief pursuant to Title VII and the EPA for damages which include, but are not limited to: a declaratory judgment that Defendant violated their rights under Title VII and the EPA; a permanent injunction prohibiting the actions complained of herein; actual damages, including back pay and front pay, lost wages, commissions and employee benefits; compensatory and punitive damages as allowed by law; costs, expert witness fees and attorney's fees; pre-judgment and post-judgment interest as allowed by law; damages for pecuniary losses and reputational injuries, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; and such other relief, legal or equitable, as may be warranted or to which Plaintiffs, Opt-In Plaintiffs, and Class Members are entitled.

# VI.
# RELIEF SOUGHT

121.     Plaintiff respectfully prays for relief against Defendants as follows:

a.     For a declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; and the Equal Pay Act, 29 U.S.C. § 206(d);

b.      For a permanent injunction against Defendants, and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the unlawful policies, practices, customs, and usages set forth herein, and requiring Defendants to take affirmative steps to ensure that the company does not engage in the same or similar violations of employees' rights under these laws in the future;

c.      For an Order certifying the Title VII Class as defined in Paragraph 77 and designating Plaintiff Payne as the Class Representative of the Title VII Class;

d.      For an Order certifying the EPA Collective as defined in Paragraph 93 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

e.      For an Order approving the form and content of a notice to be sent to the EPA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

f.      For an Order awarding Plaintiffs, Opt-In Plaintiffs, and Class Members front and back wages that have been improperly withheld; lost wages, benefits, and commissions as sought herein; liquidated damages; damages for pecuniary and nonpecuniary losses; and compensatory damages and punitive damages for distress suffered by Plaintiffs, Opt-In Plaintiffs, and Class Members, together with pre-judgment and post-judgment interest thereon at the maximum rate allowed by law;

g.      For an Order awarding Plaintiffs, Opt-In Plaintiffs, and Class Members the costs of this action;

h.      For an Order awarding Plaintiffs, Opt-In Plaintiffs, and Class Members attorneys' fees;

i.      For an Order awarding Plaintiffs, Opt-In Plaintiffs, and Class Members pre-judgment and post-judgment interest at the highest rates allowed by law;

j.      For an Order for front pay benefits to Plaintiff Polasek in lieu of reinstatement;

k.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: January 10, 2020

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:     /s/ *Clif Alexander*

**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiff and the Putative Class Members***